UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES H. SIMRELL,

                                    Plaintiff,

v.                                                          6:02-CV-0866
                                                            (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LEGAL ASSISTANCE OF WESTERN          GREGG A. THOMAS, ESQ.
     NEW YORK, INC.
*Counsel for Plaintiff*
215 North Cayuga Street
Ithaca, New York 14850

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental

_____

[1]  This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

security income ("SSI") on April 6, 1998.  (Administrative Transcript ("T") at 77-79, 212-214, 215.)  Plaintiff's application for DIB and SSI was denied initially on August 7, 1998.  (T. at 52, 216.)  Plaintiff filed a request for reconsideration.  (T. at 56.)  Upon reconsideration, the Social Security Administration ("SSA") determined that Plaintiff was entitled to SSI benefits as of September 24, 1998.  (T. at 220.)  However, since disability was established as of September 24, 1998, which was after Plaintiff's last insured date of March 31, 1997, he was not entitled to DIB.  (T. at 57.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on August 19, 1999.  (T. at 26-46.)  On September 22, 1999, the ALJ issued a decision finding that Plaintiff was not disabled prior to September 24, 1998.  (T. at 14-25.)   Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 26, 2002.  (T. at 4-5.)  Plaintiff commenced this action on July 1, 2002.  (Dkt. No. 1.)

**B.    The Contentions**

Plaintiff makes the following claims:

(1)    The ALJ failed to adequately develop the record, failed to retrieve prior applications and evidence, and failed to secure additional evidence relevant to the period in question.  (Dkt. No. 23 at 2-4.)

(2)    The ALJ erroneously applied the Grid in a non-exertional (pain) case and failed to obtain vocational expert testimony in a step 5 case.  (Dkt. No. 23 at 4-5.)

(3)    The ALJ failed to properly determine whether the Plaintiff's impairments met or equaled a listed impairment.  (Dkt. No. 23 at 5-6.)

2

(4)     Plaintiff's claim should be remanded for award and calculation of benefits.  (Dkt. No. 23 at 6-7.)

(5)     The ALJ failed to consider Plaintiff's new application as a request to reopen prior applications.  (Dkt. No. 23 at 7-8.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  Dkt. No. 18.[2]

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking DIB or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).[3]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job

---

[2]  Pursuant to General Order No. 18 of the Northern District of New York, Plaintiff usually files a brief and Defendant responds to each point raised in Plaintiff's brief.  N.D.N.Y. General Order. No. 18. In this case, Plaintiff commenced this action *pro se* and requested and was granted an extension to file his brief.  Plaintiff had not filed a brief by the extended deadline, so then-Magistrate Judge Gary L. Sharpe issued an Order directing Defendant to file her brief, to which Plaintiff would have forty-five days to respond.  (Dkt. No. 15.)  After Defendant's brief was filed, counsel appeared on behalf of Plaintiff and filed a brief.  (Dkt. Nos. 22, 23.)

[3]  As of September 25, 2003, revisions were made to certain sections of the Code of Federal Regulations ("CFR"); the revisions, however, have no effect on the outcome of this Report and Recommendation.

> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the SSA has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be
> disabled.[]  If the claimant survives the fourth stage, the fifth, and
> final, step requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing
> other jobs existing in significant numbers in the national
> economy.[]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
> 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the

plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the

defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs

which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540

U.S. at 25; other citations omitted).

     **B.**    **Scope of Review**

     In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);

*Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing

court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817

F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports the

decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

     A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on October 26, 1971.  (T. at 77.)  He obtained a GED and earned some college credits.  (T. at 36.)  He previously worked as a cook.  (*Id.*)  Plaintiff alleges disability due to severe pain as a result of a club foot deformity and a back condition.  (T. at 93.)

## IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since 1994 (T. at 23); (2) Plaintiff had severe congenital left club foot status post multiple surgeries, and chronic low back pain secondary to small right central disc lumbosacral spine without root compression, but that these impairments, singly or in combination, did not meet or medically equal a listed impairment (*Id.*); (3) Plaintiff had the residual functional capacity ("RFC") to perform the physical requirements of work except for lifting/carrying over ten pounds, standing/walking for more than two hours in an eight hour workday, and he could not push or pull with his left lower extremity, such as in the use of foot controls (*Id.*); (4) Plaintiff was unable to perform his past relevant work as a cook (T. at 24); and (5) based upon Plaintiff's RFC, age,

6

education, and work experience, Rules 201.28 and 201.27 of the Medical-Vocational Guidelines

(the "Grid") directed a conclusion that he was not disabled from November 9, 1995 through

September 23, 1998 (*Id.*).  The ALJ did find that Plaintiff was disabled since September 24,

1998.  (T. at 24.)

## V.   DISCUSSION

### A.   Whether the ALJ Failed to Adequately Develop the Record, Failed to Retrieve Prior Applications and Evidence, and Failed to Secure Additional Evidence Relevant to the Period in Question

It is difficult to determine what Plaintiff is arguing as his brief is not a model of clarity.

Plaintiff seemingly make three arguments, all in a very conclusory fashion and without citations

to supporting caselaw or relevant statute or regulations.[4]  Plaintiff first argues that all of Dr.

Sproul's diagnoses relate to surgeries that occurred well before March 31, 1997, the date Plaintiff

was last insured.  (Dkt. No. 23 at 3.)  Second, Plaintiff conclusorily argues that the ALJ failed to

develop the record "to show that the plaintiff did not require the use of a cane at any time

between his 6/6/96 surgery and the September reports of Dr. Sproul and Dr. Soden-Serjanej

before concluding that the plaintiff could perform a substantial range of sedentary work." (*Id.*)

Finally, Plaintiff seemingly argues that the documents included with his previous applications

were not marked as exhibits, and presumably, not part of the appeal pending before this Court.

(Dkt. No. 23 at 4.)  The Court addresses Plaintiff's third argument first.

#### 1.   Exhibits from Plaintiff's Previous Applications

In finding that Plaintiff had the RFC to perform sedentary work, the ALJ relied on the

---

[4]  Plaintiff cites one case, but it is unclear what argument this case is cited to support.  (Dkt. No. 23 at 4.)

residual functional capacity assessment ("RFC Assessment") of Plaintiff's treating physician,

Marianne Soden-Serjanej, D.O.  (T. at 20.)  The ALJ specifically stated that "Dr. Soden-Serjanej

prepared a report with detailed medical assessment, based on examinations conducted from

November, 1997 until September, 1998.  Accordingly, this assessment is taken as a reflection of

the claimant's capacities prior to disability determined by the Administration."  (*Id.*)  The ALJ

also took Dr. Soden-Serjanej's assessment as "governing" because she had been the "primary

treating source for quite some time."  (T. at 20.)

Thus, a threshold question is whether the ALJ's decision to take Dr. Soden-Serjanej's

RFC Assessment as "governing" and reflective of Plaintiff's capacities prior to September 24,

1998 (the date Plaintiff was found to be disabled) is supported by substantial evidence.  The

ALJ's decision would be supported by substantial evidence if the medical records contained in

the Administrative Transcript were consistent with and supported Dr. Soden-Serjanej's

assessment.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2005) (medical opinions of a

treating physician[5] are given "controlling weight" as long as they are "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with

other substantial evidence contained in the record); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d

Cir. 2004); and *Torregrosa v. Barnhart*, Civ. No. 03-5275, 2004 U.S. Dist. LEXIS 16988, at *11

(E.D.N.Y. Aug. 27, 2004).

As is explained below in detail in section V.C., the Court is recommending remand.  In

light of this, the Court also recommends remand because it is unclear whether the ALJ's decision

---

[5]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. §§ 404.1502, 416.902 (2005).

to take Dr. Soden-Serjanej's RFC Assessment as reflective of Plaintiff's capacities prior to September 24, 1998 is supported by substantial evidence.  The Court recognizes the ALJ's affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) and *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty is heightened when a claimant proceeds *pro se* as Plaintiff did at his hearing.[6]  *Echevarria*, 685 F.2d 751.

In her RFC Assessment, Dr. Soden-Serjanej noted that she had first seen Plaintiff in November, 1997 and had last seen him on September 25, 1998 (which is the day after Plaintiff was determined to be disabled).  (T. at 159.)  She also indicated that she treated him one to two times a month.  (*Id.*)  However, in the Administrative Transcript presented to the Court, there are no records from Dr. Soden-Serjanej's office prior to March 9, 1998.  In addition, there are no records from November 28, 1996 through July, 1997 which shed any light about Plaintiff's RFC.[7]  While it is possible that Plaintiff was not treated by any physicians during that time period, it is also possible that Plaintiff was treated, that the records are not contained within the record before this Court, and that these records would provide insight as to Plaintiff's RFC.

Additionally, at Plaintiff's hearing, the ALJ stated, ". . . what has been made available to me for inclusion in the record in your case are the documents that are contained in this file.  Now

---

[6]  Plaintiff subsequently retained counsel (Dkt. No. 22), but at his hearing he appeared *pro se*. (T. at 28-30.)

[7]  There is a "Disability Report- Medical" form from the Broome County Department of Social Services, but the section regarding Plaintiff's functional limitations is blank.  (T. at 142.)  There is also a report by Michael G. McClure, M.D., dated July 17, 2999, but it does not address Plaintiff's RFC.  (T. at 143-144.)

the current file, there are a couple of six part folders here.  But the current one is on top.  And the

proposed exhibits have been pre-marked 1A through 14F."  (T. at 33-34.)  Indeed, exhibits 1A

through 14 F, as well as 1SSI through 5SSI, have been included in the record before the Court.

(T. at 2-3.)  However, it is unclear to the undersigned what documents are contained in the

"couple of six part folders" and whether there is other medical evidence contained in those

folders that may have been considered by the ALJ, but are not in the record before the Court.

Since the Court is already recommending remand on another ground (*see* section V.C.

below), on remand the ALJ shall determine, *inter alia*, whether any of the "six part folders"

should have been incorporated into the record, and whether any other medical records exist, and

the ALJ should develop the record fully to determine Plaintiff's RFC.

### 2.      The Date of Plaintiff's Disability

The Court interprets Plaintiff's single, conclusory, unsupported sentence to argue that the

ALJ erred in finding that Plaintiff was disabled only as of September 24, 1998.  As stated above,

the Court is recommending remand because, in part, it is unclear as to whether the record before

the Court is complete.  Upon remand, once the ALJ determines that the record is complete, the

Court presumes that the ALJ will revisit the issue of whether Plaintiff was disabled prior to

September 24, 1998, based upon the complete record.[8]

### 3.      Plaintiff's Use of a Cane

Plaintiff's argument that the ALJ failed to develop the record "to show that the plaintiff

---

[8]  The Court's recommendation should not be interpreted to mean that the undersigned believes
that Plaintiff was or was not disabled prior to September 24, 1998; the Court cannot determine whether
the ALJ's finding in this regard is supported by substantial evidence because it is not clear whether the
record is complete or not.

did not require the use of a cane at any time between his 6/6/96 surgery and the September

reports of Dr. Sproul and Dr. Soden-Serjanej before concluding that the plaintiff could perform a

substantial range of sedentary work" is wholly unsupported by caselaw or any reference to any

statutory or regulatory authority.  (Dkt. No. 23 at 3.)

The ALJ clearly noted and considered Plaintiff's use of a cane when determining his RFC.

(T. at 18, 20, 21.)  However, as stated above in Sections V.A.1. and V.A.2., the Court is

recommending remand to determine if all relevant medical evidence was included in the record.

Upon remand, the ALJ shall consider all relevant evidence and whether Plaintiff's use of a cane

limits his ability to perform sedentary work.

**B.      Whether the ALJ Erroneously Applied the Grid in a Non-Exertional (Pain) Case and Failed to Obtain Vocational Expert Testimony in a Step 5 Case**

Plaintiff's brief on this point is conclusory and, again, not a model of clarity.  The Court

surmises that he is arguing that the ALJ erroneously applied the Grid in this matter because

Plaintiff suffers from a significant non-exertional impairment, specifically chronic pain.  (Dkt.

No. 23 at 4-5.)  Furthermore, Plaintiff seems to argue that as a result of his significant non-

exertional impairment, the ALJ should have obtained vocational expert testimony regarding what

jobs exist in the national economy that Plaintiff could perform, given his impairments.  (*Id.*)

In order to make the determination under the fifth step of the sequential analysis

described above, the Commissioner uses the Grid:

> In meeting her burden of proof on the fifth step of the sequential
> evaluation process . . . the Commissioner, under appropriate
> circumstances, may rely on the medical-vocational guidelines
> contained in 20 C.F.R. Part 404, Subpart P, App. 2 . . . .  The Grid
> takes into account the claimant's residual functional capacity in
> conjunction with the claimant's age, education and work

11

> experience.  Based on these factors, the Grid indicates whether the
> claimant can engage in any other substantial gainful work which
> exists in the national economy. Generally the result listed in the
> Grid is dispositive on the issue of disability.

*Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (footnotes and citations omitted); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  The Grid yields a decision of "disabled" or "not disabled" taking into account the claimant's RFC, age, education, and prior work experience.  20 C.F.R. § 404.1569.  *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00 (a) (2004).

Generally, the result listed in the Grid is dispositive on the issue of disability.  *Zorilla v. Chater*, 915 F. Supp. at 667.  However, exclusive reliance on the Grid "is inappropriate where the medical-vocational guidelines fail to accurately describe a claimant's particular limitations." *Id.* (citing 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e) and *Crean v. Sullivan*, Civ. No. 91-7038, 1992 WL 183421, at *4 (S.D.N.Y. July 22, 1992)).

> For example, sole reliance on the Grid may be precluded where the
> claimant's exertional impairments are compounded by significant
> nonexertional impairments that limit the range of sedentary work
> that the claimant can perform.  *See* 20 C.F.R. Part 404, Subpart P,
> App. 2, §§ 200.00(e)(2), 201.00(h); *see also* [*Bapp v. Bowen*, 802
> F.2d 601, 605 (2d Cir. 1986)]; *Crean*, 1992 WL 183421, at *4-*5.[1]
> This is also the case where there is not substantial evidence that a
> claimant can perform a full exertional range of work.  *See Nelson
> v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989) (individual assessment
> required where there is insufficient proof that a claimant can
> perform a full range of sedentary work).

*Zorilla v. Chater*, 915 F. Supp. at 667 (footnote omitted).

It is not sufficient for Plaintiff to merely allege that a significant non-exertional impairment exists; in order for the Grid to be inapplicable, Plaintiff's chronic pain would have to

be significant and limit the range of sedentary work that he could perform.  20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(e)(2), 201.00(h); *see also Bapp*, 802 F.2d 605; *Crean*, 1992 WL 183421, at *4-*5.  "By use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp*, 802 F.2d at 606.

With regard to the medical evidence contained in the Administrative Transcript before the Court, Plaintiff has not pointed to any specific evidence to support his contention that his chronic pain is significant and limits the range of work he can perform.  Indeed, the record contains evidence to the contrary.  In an October 27, 1998 RFC Assessment, his treating physician, Dr. Soden-Serjanej, noted that Plaintiff's current symptoms included pain and difficulty with ambulation.  (T. at 159.)  Plaintiff's pain was well documented throughout the course of his treatment with Dr. Soden-Serjanej.  For example, on April 20, 1998, Dr. Soden-Serjanej noted that plaintiff had "excruciating pain"in his left foot.  (T. at 145.)  On March 9, 1998, Debbie Stone, a family nurse practitioner with Dr. Soden-Serjanej's office also noted that Plaintiff experienced chronic left foot pain.  (*Id.*)  However, even though Plaintiff's pain was well documented by his treating physician, she opined that he was able to perform certain work-related functions.  She opined that Plaintiff could occasionally[9] lift and carry up to ten pounds; stand and/or walk for up to two hours per day; and had an unlimited ability to sit.  (T. at 162.)  Dr. Soden-Serjanej noted that Plaintiff was unable to use foot controls, but had no postural, manipulative, visual, communicative, or environmental limitations.  (*Id.*)

---

[9]  "Occasionally" was defined as up to one-third of a work day.  (T. at 162.)

Dr. Soden-Serjanej's assessment of Plaintiff's residual functional capacity comports with the Regulations' definition of sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a) (2005).  As Dr. Soden-Serjanej did not note any limitations that significantly diminished Plaintiff's ability to perform sedentary work, the ALJ's application of the Grid seems appropriate.  *Santos v. Apfel*, Civ. No. 98-6783, 1999 WL 458145 (E.D.N.Y. June 24, 1999).

The Court turns to Plaintiff's argument that "[a] claimant suffering from a significant non-exertional impairment should not be subject to a decision based on the [Grid] without vocational expert testimony or similar evidence that there are jobs in the national economy which a person with the full range of [Plaintiff's] impairments, including the non-exertional ones, can perform." (Dkt. No. 23 at 5.)  The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grid]." *Bapp*, 802 F.2d 603.  Rather, whether vocational expert testimony is necessary or not should be determined on a case-by-case basis. *Michaels v. Apfel*, 46 F. Supp. 2d 126, 139 (D. Conn. 1999)  It is only in the case where a claimant's non-exertional impairments significantly diminish "his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the [Grid], then the Secretary must introduce the testimony of a vocational expert . . . that jobs

14

exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603.

Again, Plaintiff has failed to point to any evidence in the record before the Court that would show that his chronic pain renders him unable to perform the full range of sedentary work, and the medical evidence discussed above does not support such an argument.  The ALJ acknowledged that Plaintiff experienced pain in his foot and lower back, but was still able to perform sedentary work.  As stated above, there is substantial evidence to support this.

However, the Court is recommending remand as discussed in Sections V.A. and V.C.  If, upon remand, the ALJ discovers medical evidence which was not previously included in the record, which is probative regarding the existence of any significant non-exertional impairment(s) that significantly diminish Plaintiff's ability to work, the Court assumes that the ALJ will reevaluate this argument.

### C.    Whether the ALJ Failed to Properly Determine Whether the Plaintiff's Impairments Met or Equaled a Listed Impairment

Plaintiff makes two arguments: (1) that the ALJ erred in failing to consider another listing which may have been comparable to Plaintiff's impairments, and (2) that the ALJ and the Appeals Council "misapplied the musculoskeletal listing in making their determinations."  (Dkt. No. 23 at 5-6.)  It is necessary for the Court to first address Plaintiff's second contention. Plaintiff argues that because the regulations regarding the musculoskeletal system, found at section one of Appendix 1 to Subpart P of Part 404, changed in 2002, "[i]n evaluating the severity of the plaintiff's impairments between November 9, 1995 and September 24, 1998, the Appeals Council should have secured an expert opinion applying both the new and old listings to determine

15

medical equivalence."[10]  (Dkt. No. 23 at 6.)

The changes to the regulations regarding the listing of impairments used to evaluate musculoskeletal impairments (the "Listing") became effective as of February 19, 2002.  66 Fed. Reg. 58010-01 (Nov. 19, 2001).  In the Federal Register, the SSA stated:

> We will continue to apply the current rules until the effective date of these final rules.  When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules . . . As is our usual practice when we make changes to our regulations, we will apply these final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process, including those claims that are pending administrative review after remand from a Federal court.  With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision . . . In those cases decided by a court after the effective date of the rules, where the court vacates the Commissioner's final decision and remands the case for further administrative proceedings, on remand, we will apply the provisions of these final rules to the entire period at issue in the claim.

66 Fed. Reg. 58,010-01, 58,011 (Nov. 19, 2001).

Plaintiff filed his DIB and SSI applications on April 6, 1998.  However, the ALJ's decision did not become the final decision of the Commissioner until April 26, 2002, when the Appeals Council denied Plaintiff's request for review.  Accordingly, when the final rules became effective on February 19, 2002, Plaintiff's application was pending and it was not the final decision of the SSA.  Because Plaintiff's application was "pending at any stage of [the SSA's] administrative review process," the final rules should have been applied.  66 Fed. Reg. 58,010-

---

[10]  The Court notes that Plaintiff provides no caselaw authority, nor does he cite to any rule or regulation to support his wholly conclusory contention.  (Dkt. No. 23 at 6.)

01, 58,011.  Accordingly, because the ALJ applied the Listing that was in effect prior to February 19, 2002, the Court recommends remand for the application of the Listing that became effective on February 19, 2002.  Furthermore, upon remand, the ALJ shall consider all applicable listings.

**D.     Whether the Proper Remedy Is to Remand for Award and Calculation of Benefits**

Plaintiff contends that Defendant failed to meet her burden at step five of the sequential evaluation, and therefore the matter should be remanded solely for the calculation of benefits. (Dkt. No. 23 at 7.)  The Court disagrees and recommends that the matter be remanded for further development of the evidence.

"'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.'"  *Pratts,* 94 F.3d at 39 (quoting *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980)) (alteration in original); *see also Sobolewski,* 985 F. Supp. at 314 ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.").  In other situations, where a court has had "no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.[]"  *Rosa*, 168 F.3d at 83 (footnote omitted) (citing *Balsamo v. Chater,* 142 F.3d 75, 82 (2d Cir. 1998)).

Here, since further development of the evidence is necessary, remand solely for the calculation of benefits would be inappropriate.

**E.     Whether the ALJ Failed to Consider Plaintiff's New Application as a Request to Reopen Prior Applications**

Plaintiff seemingly argues that his April 6, 1998 application for DIB and SSI benefits

should have been treated as a request to reopen his prior applications for benefits under the "good cause" provision of 20 C.F.R. § 404.989(a)(1).  (Dkt. No. 23 at 7-8).  Plaintiff filed two previous applications, both for DIB and SSI benefits; the first on May 31, 1996, alleging an onset date of December 20, 1994.  (T. at 15, 30.[11])  This application was denied on September 4, 1996.  (*Id.*)  The second application was filed on February 26, 1997, alleging the same onset date of December 20, 1994.  (T. at 15, 31.)  The second application was denied on July 17, 1997.  (*Id.*)  Neither of Plaintiff's previous applications was pursued after the initial denial.  (T. at 15, 31-32.)

"As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)).  Furthermore, absent a constitutional claim, a District Court lacks subject matter jurisdiction over the review of the SSA's refusal to reopen a prior final decision.  *Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983) and *Whittaker v. Commissioner of Soc. Sec.*, 307 F. Supp. 2d 430, 441 (N.D.N.Y. 2004) (Sharpe, J.).  "[J]udicial review is permitted only if there has been a final decision of the Commissioner made after a hearing."  *Whittaker*, 307 F. Supp. 2d at 441 (citing *Califano v. Sanders*, 430 U.S. 99, 107-108 (1977)).  In the instant matter, with regard to Plaintiff's first and second applications, Plaintiff has not raised any colorable constitutional claim to show that his applications should have been reopened.  Additionally, hearings were not held in either case because Plaintiff did not pursue them after their initial denials.

---

[11]  These applications and their denials are not contained in the record before this Court. However, the dates are derived from the ALJ's summary of the procedural history and medical evidence set forth in his decision at pages fourteen through twenty-five of the Administrative Transcript, which the Plaintiff and the Defendant both incorporated into their briefs.  (Dkt. No. 18 at 1-2, Dkt. No. 23 at 1.)

However, Plaintiff argues that under the "good cause" provision of the CFR, the Commissioner should have treated Plaintiff's third application as a request to reopen his prior applications.  (Dkt. No. 23 at 8.)  "Generally, if you are dissatisfied with a determination [] or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review, and that determination or decision becomes final."  20 C.F.R. §§ 404.987, 416.1487 (2005).  "A determination, revised determination, or revised decision may be reopened – (a) Within 12 months of the date of the notice of the initial determination for any reason."  20 C.F.R. §§ 404.988(a), 416.1488(a) (2005). The CFR also provides that a final determination or decision may be reopened: "[w]ithin four years[12] of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case . . . ."  20 C.F.R. § 404.988(b) (2005).  "We will find that there is good cause to reopen a determination or decision if – (1) New and material evidence is furnished . . . ."  20 C.F.R. §§ 404.989(a)(1); 416.1489(a)(1) (2005).

Initially the Court notes that it is not clear from the record before the Court whether the request to reopen Plaintiff's previous applications was ever made directly to the ALJ.  In any event, Plaintiff has failed to meet any of the conditions for reopening a determination or decision. In his brief, Plaintiff did not argue or even mention that he made a request to reopen the decisions regarding his previous applications within twelve months of the date of the notice.  (Dkt. No. 23.)

Furthermore, with regard to "good cause," Plaintiff argues that the "good cause" in this

---

[12]  Four years is the amount of time in DIB cases.  With regard to SSI benefits, 20 C.F.R. § 1488(b) states that "[a] determination, revised determination, decision, or revised decision may be reopened . . . (b) [w]ithin **two years** of the date of the notice of the initial determination if we find good cause . . . ."  20 C.F.R. § 1488(b) (2005).

case is the medical evidence produced regarding his third application, which should have been considered "new and material" evidence.  (Dkt. No. 23 at 8.)  He makes the conclusory statement that "[c]ertainly, much, if not all, of the medical evidence produced in the evaluation of the plaintiff's third application should have been considered 'new and material' to the prior determinations regarding the evaluation of the severity of a congenital condition that was not corrected by subsequent surgery."  (Dkt. No. 23 at 8.)  However, other than this single and conclusory sentence, Plaintiff does not explain how this evidence is new and material, nor does he specifically point out which evidence should be considered new and material.

"Nevertheless, federal courts may review the Commissioner's decision not to reopen a disability application in two circumstances: where the Commissioner has constructively reopened the case and where the claimant has been denied due process." *Byam*, 336 F.3d at 180.  "If the Commissioner 'reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived' and thus, 'the claim is . . . subject to judicial review." *Id.* (citations omitted).  Assuming that the ALJ's decision could be construed as a decision not to reopen Plaintiff's previous applications,[13] it is conceivable that the ALJ could have considered records that would have constituted a constructive reopening of Plaintiff's previous applications because as stated above in Section V.A.1., it is unclear what documents were contained in the "couple of six part folders" referenced by the ALJ and whether there is other medical evidence that may have been considered by the ALJ, but are not contained in the record before the Court.

---

[13]   The ALJ's decision does not make any reference to this issue of reopening previous applications.

However, the Court declines to exercise judicial review at this time because it is unclear from the present record whether Plaintiff's request to reopen his previous applications was ever made to the ALJ and because the Court would have to assume that the ALJ implicitly decided not to reopen Plaintiff's previous applications.  Instead, the Court recommends remand for the ALJ to consider, *inter alia*, whether there was a constructive reopening of the previous applications, and whether Plaintiff's third application could be treated as a request to reopen his prior applications, including any issues regarding timeliness and good cause.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[14] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 5, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[14]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2005).

21